# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *People v. Lard*, 2013 IL App (1st) 110836

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. CHARLES LARD, Defendant-Appellant. |
| District & No. | First District, Second Division<br>Docket No. 1-11-0836 |
| Filed<br>Rehearing denied | June 28, 2013<br>July 25, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Defendant's conviction for residential burglary was upheld over his contention that his right to cross-examine the arresting officer was violated when the trial court admitted the officer's preliminary hearing testimony at trial after learning the officer died prior to the trial, since defendant's counsel had an adequate and effective opportunity to cross-examine the officer at the preliminary hearing. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 09-C4-41238 (02); the Hon. Thomas M. Tucker, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on Appeal

Michael J. Pelletier, Alan D. Goldberg, Elizabeth Cook, and Todd T. McHenry, all of State Appellate Defender's Office, of Chicago, for appellant.

Anita M. Alvarez, State's Attorney, of Chicago (Alan J. Spellberg, William L. Toffenetti, and Stephanie L. Gersch, Assistant State's Attorneys, of counsel), for the People.

Panel

PRESIDING JUSTICE HARRIS delivered the judgment of the court, with opinion.

Justices Quinn and Connors concurred in the judgment and opinion.

## OPINION

¶ 1    Defendant, Charles Lard, appeals his conviction after a bench trial of residential burglary and his sentence of six years' imprisonment. On appeal, Lard contends the admission of Officer Vincent Wilcox's preliminary hearing testimony violated his constitutional right to cross-examination where Officer Wilcox died prior to trial and Lard did not have an adequate opportunity to cross-examine him at the preliminary hearing. For the following reasons, we affirm.

¶ 2                          JURISDICTION

¶ 3    The trial court sentenced Lard on March 22, 2011. He filed a notice of appeal on March 22, 2011. Accordingly, this court has jurisdiction pursuant to article VI, section 6, of the Illinois Constitution and Illinois Supreme Court Rules 603 and 606, governing appeals from a final judgment of conviction in a criminal case entered below. Ill. Const. 1970, art. VI, § 6; Ill. S. Ct. R. 603 (eff. Oct. 1, 2010); R. 606 (eff. Mar. 20, 2009).

¶ 4                          BACKGROUND

¶ 5    Lard was convicted of one count of residential burglary. Prior to his trial, a preliminary hearing was held on October 7, 2009, in which Officer Wilcox testified. He stated that on September 22, 2009, at approximately 6 p.m., he was investigating a report of two suspicious men in the area of 1023 South 11th Avenue in Maywood, Illinois. There was an apartment building at that location and Officer Wilcox observed two men in the rear going in the back basement door. When asked whether the men were presently in the courtroom, Officer Wilcox answered affirmatively and identified Lard and his codefendant, Charles Denton.[1]

_____

[1]Charles Denton is not a party to this appeal.

¶ 6 Officer Wilcox testified that the men had "put a carpet loaded with pipes down on the ground just outside the door" before he saw them reenter the building. Officer Wilcox ascertained that Michael Ingram was the owner of the building and Ingram told him that the men did not have permission to enter, or to remove anything from, the building.

¶ 7 On cross-examination, Officer Wilcox stated that "[a]bout three minutes" elapsed from the time he received a call about suspicious persons until he arrived on the scene. Defense counsel then questioned Officer Wilcox as follows:

"Q. And where did you first observe–did you observe both my clients at the same time?

A. I observed Mr. Denton putting the carpet down.

Q. So were–how far–where were you when you first observed them?

A. I was at the street.

Q. You were on the street?

A. Yes.

Q. And you saw them in the rear of the building is that what you said?

A. I saw them in the rear next to the driveway, yes.

Q. So where–could you tell me where the door is that you're talking about that you saw them at if you're at the rear and they're in the front? I'm confused where you were versus where the door was?

A. I was on the street. I pulled into the driveway. I pulled into the rear of the building.

Q. Okay. You said you were on street so I was confused. So you were at the rear of the building?

MR. O'MALLEY: Objection. Asked and answered.

THE COURT: Overruled.

A. [Witness] On the street.

Q. So if you're on the street, where is the–where were they when you first observed them? In the rear of the building?

MR. O'MALLEY: Objection. Asked and answered.

THE COURT: Overruled.

A. [Witness] On the–at the driveway at the rear of the building.

Q. So they were in the driveway?

A. Yes.

Q. Okay. And then you pulled into the driveway?

A. Yes.

Q. And you saw them walk around to the back of the building?

A. They were at the rear of the building. The driveway goes to the rear of the building.

Q. Okay. And then where was the door that went down into the basement?

A. Right next to the driveway.

Q. So it's on the side of the building or to the rear of the building?

MR. O'MALLEY: Objection.

THE COURT: Overruled.

A. [Witness] It's in the rear of the building. When you come down the driveway, you look to your left. The door is right their [*sic*].

Q. So you pulled down the driveway and you could see the rear of the building?

A. Yes.

Q. All right. And what did you see Mr. Lard–where did you see Mr. Lard when you were doing that when you came down the driveway?

A. He was going in the door.

Q. He was going in the door?

A. Yes.

Q. Okay. Did he ever get in the door? Did you ever see him enter the building?

A. He was in the building, yes.

Q. So was in, or he was going in?

MR. O'MALLEY: Objection. Argumentative.

THE COURT: Sustained.

Q. [Defense Attorney] Okay. So–and did you ever see Mr. Lard holding any–the carpet?

MR. O'MALLEY: Objection.

THE COURT: He can answer yes or no.

A. [Witness] No.

Q. And Mr. Denton, the first time you saw him was when he was entering the building?

MR. O'MALLEY: Objection. He already said the first time he saw each of the defendants.

MS. SEMROW: Judge, I've got two defendants here. I'm trying to–

THE COURT: All right. He can answer.

A. [Witness] He was putting the carpet down on the driveway.

Q. Okay. And then he was following Mr. Lard into the building, is that–

MR. O'MALLEY: Objection. He just said he was putting the carpet down.

THE COURT: He can answer what he did after he put the carpet down.

A. [Witness] Yes."

The trial court found probable cause after the preliminary hearing and set the case for arraignment.

¶ 8    Officer Wilcox died prior to trial. The State sought to admit his preliminary hearing

testimony under section 115-10.4 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/115-10.4 (West 2010)), which provides for the admission of prior statements when the witness is deceased. Defense counsel, however, filed a motion *in limine* to bar his testimony. Counsel argued that discovery indicated that the building had been burglarized a few hours before Officer Wilcox observed Lard and Denton at the apartment building. He further argued that since no reports of the first break-in were tendered prior to the preliminary hearing, counsel had no opportunity to cross-examine Officer Wilcox about that prior burglary and therefore his cross-examination of the officer was inadequate. The trial court reserved its ruling on the motion until after the State presented its witnesses.

¶ 9        At the joint bench trial, Ingram testified that on September 22, 2009, at approximately 1 p.m., he was notified of a burglary at an apartment building he owned in Maywood. The building was located at 1023 South 11th Avenue. When he arrived at the location, Ingram saw that the bolts on the back door had been smashed and the door looked like "it had been kicked in." Ingram also observed that the ceiling "had been ripped down" and copper pipes were missing. Ingram repaired the damage and replaced the lock on the back door.

¶ 10       When Ingram returned to the building later that day, around 6 p.m., he saw a police car in the driveway. Officer Wilcox approached him and informed him that he caught some people in the building and they were sitting in the police car. Officer Wilcox asked Ingram to inspect the building for damage. Ingram noticed that the back door "had been pushed in again" and he also observed more damage to the ceiling. He saw that copper was taken from the boilers and water tanks. When asked to look at the People's exhibit No. 4, Ingram identified the pipes, as well as the carpet underneath wrapping the pipes, as coming from inside his building. Ingram stated that he did not know Lard or Denton nor did he give them permission to enter his building.

¶ 11       Lard and Denton were represented by separate counsel during the trial. Counsel for Denton cross-examined Ingram first, and counsel for Lard adopted the cross-examination. Ingram stated that he did not observe the first break-in and did not know the time it occurred. Ingram did not personally see Lard or Denton enter his building or take anything from the building. Ingram stated that a person cannot see the rear of his building from the street.

¶ 12       The State next called Mike O'Malley, the assistant State's Attorney (ASA) who handled the preliminary hearing. After reviewing the transcript of the proceedings, ASA O'Malley stated that the transcript accurately reflected his questions to Officer Wilcox and the officer's answers. The trial court then allowed Officer Wilcox's testimony into evidence and it was published for the court.

¶ 13       After presentation of the evidence, the trial court found Lard guilty of one count of residential burglary. Lard filed a motion for a new trial on March 22, 2011, arguing that the trial court erred in admitting the preliminary hearing testimony of Officer Wilcox. The trial court denied Lard's motion and subsequently sentenced him to six years' imprisonment. Lard filed this timely appeal.

¶ 14                                          ANALYSIS

¶ 15       Lard contends that the trial court's admission of Wilcox's preliminary hearing testimony

violated both section 115-10.4 of the Code and his constitutional right to confront witnesses against him. In determining whether to admit prior testimony of a deceased witness, section 115-10.4 requires courts to consider the following factors: (1) the materiality of the prior testimony; (2) the probative value of the prior testimony; (3) the trustworthiness of the prior testimony; (4) the interests of justice; and (5) the prior opportunity for cross-examination. *People v. Melchor*, 376 Ill. App. 3d 444, 450 (2007). Although Lard lists these factors in his brief, his argument focuses solely on the prior opportunity for effective cross-examination, which is also a constitutional requisite for the admission of prior testimony. Therefore, Lard has forfeited any challenges to the adequacy of the remaining section 115-10.4 factors pursuant to Illinois Supreme Court Rule 341(h)(7), which provides that "[p]oints not argued are waived." Ill. S. Ct. R. 341(h)(7) (eff. July 1, 2008).

¶ 16    Lard submits that the proper standard of review is *de novo* because no facts are in dispute. The State does not challenge this argument. However, in *People v. Torres*, 2012 IL 111302, ¶ 46, which dealt with the issue of adequate cross-examination under the confrontation clause, our supreme court noted that it "has held that a trial court's ruling on the admission of former testimony is to be reviewed for an abuse of discretion." See *People v. Sutherland*, 223 Ill. 2d 187, 272-73 (2006). We will review the trial court's determination under the abuse of discretion standard.

¶ 17    In order to admit prior preliminary hearing testimony, the confrontation clause requires that the witness from the prior proceeding be unavailable at trial "and the defendant must have had an adequate opportunity to effectively cross-examine the witness at the prior hearing." *Torres*, 2012 IL 111302, ¶ 53. Since both parties acknowledge that Officer Wilcox died prior to trial, the only issue before us is whether Lard's cross-examination of Officer Wilcox at the preliminary hearing was adequate and effective. In an adequate and effective cross-examination, " 'the motive and focus of the cross-examination at the time of the initial proceeding must be the same or similar to that which guides the cross-examination during the subsequent proceeding.' " *Sutherland*, 223 Ill. 2d at 273 (quoting *People v. Rice*, 166 Ill. 2d 35, 41 (1995)).

¶ 18    The purpose of a preliminary hearing is to determine probable cause that a crime has been committed by the defendant so as to warrant further proceedings. *People v. Smith*, 236 Ill. 2d 162, 169-70 (2010). Determinations of probable cause involve the probability of criminal activity rather than the proof beyond a reasonable doubt required to find guilt at trial. *People v. Tisler*, 103 Ill. 2d 226, 236 (1984). However, the questioning of witnesses in a preliminary hearing and at trial focus on the same issue, namely, "whether the evidence supports a finding that the defendant committed the charged crime." *Torres*, 2012 IL 111302, ¶ 59. As our supreme court reasoned in *Torres*, "[t]o the extent a witness testifies to facts supporting such a finding, the defense has a motive in questioning that witness to test the witness' credibility, powers of observation, and recall, and, if possible, undermine that testimony in the eyes of the factfinder." *Id*.

¶ 19    At the preliminary hearing, Officer Wilcox testified that he received a call about suspicious persons at 1023 South 11th Avenue in Maywood, Illinois. When he arrived he observed the building from the street and saw two men in the rear going in the back basement door. He identified the men as Lard and codefendant Denton. Officer Wilcox testified that

the men had "put a carpet loaded with pipes down on the ground just outside the door" before he saw them reenter the building. He spoke with Ingram, the owner, who told him that the men did not have permission to enter, or to remove anything from, the building.

¶ 20    On cross-examination, Officer Wilcox stated that "[a]bout three minutes" elapsed from the time he received a call about suspicious persons until he arrived on the scene. He was on the street when he first observed the men at the rear of the building, next to the driveway. Officer Wilcox then pulled into the driveway at the rear of the building. During cross-examination, defense counsel challenged Officer Wilcox's ability to observe the rear of the building from the street and questioned whether he saw the defendants using the rear door. He also acknowledged that he did not see Lard holding the carpet, but he did see codefendant Denton carrying the carpet. Defense counsel's questioning at the preliminary hearing tested Wilcox's credibility, and his powers of observation and recall, just as it would have done during the trial. Therefore, as required by *Sutherland* and *Rice* for admission of the testimony, the cross-examination at the preliminary hearing involved the same motive and focus as a similar cross-examination would have at trial.

¶ 21    Lard, however, argues that defense counsel's cross-examination was inadequate because he did not inquire "about the circumstances of the arrest, the possible presence of burglary tools, whether anyone else was present at the time, Lard's particular role in the incident, or any other matter that could have been relevant to a defense at trial." Lard provides no support for his argument that the confrontation clause mandates inquiry into these specific facts. The clause does not require that counsel have the same opportunity at a preliminary hearing to ask about every fact that may be relevant at trial. As our supreme court stated in *Torres*, defense counsel at a preliminary hearing may not have all the information discovery may later disclose; what matters is that defense counsel had a "fair opportunity" to inquire into a witness's observation, interest, bias, prejudice, and motive. *Torres*, 2012 IL 111302, ¶ 66. Defense counsel had that opportunity and challenged Wilcox's testimony accordingly.

¶ 22    Citing *Torres*, Lard also argues that other factors, such as the information defense counsel knows while conducting the prior cross-examination, may affect counsel's ability and opportunity to cross-examine a witness. Therefore, this court should not rely solely on the motive and focus test in determining the adequacy of prior cross-examination.

¶ 23    *Torres*, however, is distinguishable from the case at bar. In *Torres*, the defendant was charged with first degree murder in the shooting death of the victim. *Id*. ¶ 4. At the preliminary hearing, witness Leopoldo Pena testified that defendant and the victim were engaged in conversation at the bar where he worked. *Id*. ¶ 7. The victim asked the defendant what problems he had with the victim's father. *Id.* A bottle of beer fell to the floor and broke, so Pena mopped the floor and when he went to the back of the bar to wash out the mop he heard a gunshot. *Id*. ¶ 8. When he returned to the bar, he saw the victim lying on the floor. *Id*. At trial Pena was unavailable as a witness because he had been deported to Mexico, and the supreme court expressed concern that the State did not provide details of the deportation or present testimony or evidence of the deportation. *Id*. ¶¶ 13,16. Furthermore, subsequent discovery revealed that Pena had made inconsistent statements to the police on key issues, and not being privy to this information at the hearing, defense counsel could not adequately cross-examine Pena on matters affecting his credibility. *Id*. ¶¶ 62, 63. Pena's credibility was

a significant issue since only his testimony placed defendant in the bar at the time of the shooting. *Id*. ¶ 63. Finally, the supreme court noted that the trial court was "not enthusiastic about proceeding immediately with the preliminary hearing" and its manner of responding to the defense attorney during cross-examination seemed to send a message "to wrap it up" before counsel was prepared to do so. *Id*. ¶ 64. The supreme court held that the trial court erred in admitting Pena's preliminary hearing testimony at trial. *Id*. ¶ 66.

¶ 24    Lard contends that Officer Wilcox's preliminary hearing testimony should not have been admitted because defense counsel at the time did not have the benefit of discovery, which subsequently revealed that a break-in at the property had occurred three hours earlier and Officer Wilcox was also called at that time. Lard argues that there was a discrepancy between Officer Wilcox's report in which he noted that Ingram told him the first break-in occurred between September 21 and September 22, and Ingram's testimony at trial in which he stated that the first break-in occurred on September 22. Also, discovery would have informed defense counsel that the rear of the apartment building could not be seen from the street and Officer Wilcox testified that he first observed the defendants from the street. Lard contends that these inconsistencies go to Wilcox's credibility and without this information, defense counsel could not adequately cross-examine Wilcox at the preliminary hearing.

¶ 25    Although defense counsel did not know of the prior break-in, the circumstances of that crime are not relevant to the case at bar. Lard and his codefendant were not charged with the prior break-in and no evidence linked them to the prior crime. Also, although Officer Wilcox stated that he first observed the defendants when he was on the street, he clarified that he first saw them on the driveway which led to the rear of the building. Officer Wilcox then pulled into the driveway and observed the defendants going in and out of the door which was located at the rear of the building. Lard does not show how additional cross-examination with information gleaned from subsequent discovery would benefit him. See *Torres*, 2012 IL 111302, ¶ 62 (pertinent to the inquiry of whether defense counsel at the preliminary hearing had the necessary information to conduct an adequate cross-examination is whether the additional information would benefit defendant).

¶ 26    Lard also argues that defense counsel's ability to cross-examine Officer Wilcox was hampered by the fact that counsel represented both Lard and codefendant Denton at the preliminary hearing. He contends that without benefit of discovery, defense counsel "could not know if the two possessed antagonistic defenses." Lard speculates that defense counsel had to "keep her cross-examination restrained, so as to avoid eliciting any testimony that might later harm one defendant, to the benefit of the other." In *Torres*, it was undisputed that subsequent discovery revealed that Pena gave inconsistent statements to police on key issues which affected his credibility as the only witness to place the defendant at the scene of the shooting. *Torres*, 2012 IL 111302, ¶ 63. Also, remarks made by the trial court and the abrupt manner in which the court conducted the preliminary proceedings created an atmosphere that curtailed defense counsel's cross-examination at the hearing. *Id*. ¶ 64. Lard, however, does not present actual evidence that Lard and Denton had antagonistic defenses, or that counsel was concerned about eliciting information that would benefit one defendant at the expense of the other. Mere speculation that discovery might have produced evidence beneficial to Lard cannot support his argument that defense counsel's cross-examination of Officer

Wilcox at the preliminary hearing was not adequate and effective. *Id*. ¶¶ 62, 63. Viewed in its totality, we find that defense counsel's cross-examination of Officer Wilcox was adequate and effective under the confrontation clause, and the trial court did not err in admitting his preliminary hearing testimony.

¶ 27　　For the foregoing reasons, the judgment of the circuit court is affirmed.

¶ 28　　Affirmed.